**Mrs. Tobie BRANTLEY,
Plaintiff-Appellant,**

v.

**M.F. SURLES, et al.,
Defendants-Appellees.**

No. 85–4073
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

July 15, 1985.

Charles L. Lewis, Jr., Louisville, Miss., for plaintiff-appellant.

John L. Low, IV, Jackson, Miss., for defendants-appellees.

Before CLARK, Chief Judge, TATE, and GARWOOD, Circuit Judges.

PER CURIAM:

Mrs. Tobie Brantley appeals the district court's finding that she was fired from her job as a public school cafeteria manager for legitimate, nondiscriminatory reasons. We reverse.

Mrs. Brantley was a white cafeteria manager at Kilmichael Elementary, a predominantly black public school in Montgomery County, Mississippi. She was fired in 1976 after her son transferred from the local public high school to a private, segregated academy. Initially, M.F. Surles, the local Superintendent of Education, indicated that the sole reason for Brantley's discharge was her son's attendance at the private school. Brantley retained counsel who challenged the dismissal. The Montgomery County Board of Education set a hearing and notified Brantley's attorney that Brantley was also charged with failing to perform her job properly.

Following the hearing, the board met in executive session and affirmed its decision to fire Brantley. The board concluded that Brantley created dissension between blacks

and whites at the school by sending her son to a private, segregated academy. The board also found that Brantley had performed her job improperly and had been disrespectful to one of the board members.

Brantley sued Superintendent Surles and the school board members in a Mississippi state court on a state law claim. After the suit was dismissed twice for lack of jurisdiction, see Brantley v. Surles, 404 So.2d 1013 (Miss.1981), Brantley filed a claim under 42 U.S.C. § 1983 in federal court. Brantley maintained that her constitutionally protected interest in the education of her son was violated by the board's action.

The district court dismissed Brantley's claim, but was reversed by a panel of this court. See Brantley v. Surles, 718 F.2d 1354 (5th Cir.1983). We concluded that Brantley's allegations stated a claim upon which relief could be granted. In our decision, we instructed the district court to make three factual determinations:

> On remand, ... the district court must determine whether the enrollment of [Brantley's son] in the private school materially and substantially interfered with the operation or effectiveness of the educational program at Kilmichael Elementary. If the court finds that it did not, then as a matter of law, Mrs. Brantley's interest in controlling the education of her son takes precedence over the school board's interest in regulating the activities of its cafeteria workers.
>
> On remand the district court must also determine whether the protected activity played a substantial part in the board's discharge decision. If the court finds that it did, then the court must determine whether Mrs. Brantley would have been fired anyway for reasons completely independent of the private school enrollment decision.

Id. at 1359 (footnotes omitted).

■ The parties agreed to waive trial on the merits and submit the case to the district court on the basis of the transcript of the hearing before the Board of Education and the correspondence between Brantley, her attorney, and Surles. The court considered the case upon the agreed record and made detailed findings. Although the district court's factual findings are based entirely on the written transcript and correspondence, we are bound to uphold those findings unless clearly erroneous. See Anderson v. City of Bessemer City, —— U.S. ——, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985); Fed.R.Civ.P. 52(a).

■ The court found no evidence that the enrollment of Brantley's son in the private school materially and substantially interfered with the operation or effectiveness of the educational program at the public school. Although Surles testified that interracial dissension might occur after Brantley's son withdrew from public school, his belief was unsupported by any objective evidence. The court's finding is not challenged on appeal, and is not clearly erroneous.

The court also found that Brantley's constitutionally protected interest in the education of her son unquestionably played a substantial part in the board's decision to fire her. The transfer of Brantley's son to a private school dominated Brantley's discussions with the board and Surles. Indeed, the transfer of Brantley's son was the only reason offered by Surles in several letters written to Brantley before Brantley's attorney challenged the dismissal and requested a hearing. The court's finding is well supported by the record and is also unchallenged on appeal. It is not clearly erroneous.

Because the court found that the transfer of Brantley's son to a private school had a substantial impact on the board's decision to fire Brantley, the court had to determine whether the board would have fired Brantley even if her son had not transferred. The board maintained that it also fired Brantley because her work was unsatisfactory and she neglected her duties. The record contains abundant testimony to refute the board's contention, however, and little to support it. The court found that the board's contention was an afterthought. Surles could not recall a sin-

gle occasion on which he complained to Brantley about her work. In his dismissal letter, Surles complimented Brantley for her service to the school. The court found overwhelming evidence to support its determination that Brantley was not fired for her job performance. That determination is not clearly erroneous.

■ The final reason offered by the board for its decision to fire Brantley is Brantley's disrespectful remark about one of the board members. The court found that Brantley's remark justified the board's decision, and concluded that the board would have fired her for it regardless of the transfer of Brantley's son to the private school. We disagree. As demonstrated below, the record establishes that the board had already fired Brantley before the disrespectful remark occurred. The court's finding is clearly erroneous. The remark could not have played any part in the board's decision.

On August 2, 1976, Brantley met informally with the board to discuss her employment following the enrollment of her son in the private school. After meeting with Brantley, the board went into executive session and decided that Brantley should be fired. On August 26, Surles notified Brantley of a pending board meeting to discuss her case, and invited her to attend.

On September 13, the board met formally with Brantley. In an executive session held later that day, the board voted unanimously to fire Brantley. The next day, Surles notified Brantley in writing of the board's decision. Brantley's supervisor informed Brantley that her last day of employment would be September 17. On September 15, Brantley met with Surles to discuss the board's decision. After Brantley learned at the meeting with Surles that board member Card had seconded the motion to fire her, Brantley referred to Card as an "old lying devil."

Surles wrote another letter to Brantley on September 20. Surles indicated that Brantley's employment had ended on September 17, and reviewed the events leading to the board's decision to fire Brantley.

On September 22, an attorney hired by Brantley challenged the board's decision and asked for a hearing before the board. Surles wrote a letter to Brantley's attorney on October 15. In that letter, Surles notified Brantley's attorney that a hearing would be held on November 1 to review Brantley's case. On November 1, the board held a hearing and affirmed its decision.

The district court indicated that Brantley made the discourteous remark at one of the board meetings. This is incorrect. Surles was the only witness at the November 1 hearing who testified about the remark. On direct examination, Surles was asked whether Brantley had made any derogatory remarks during a previous appearance before the board. Surles repeated the disrespectful comment made by Brantley about board member Card. On cross-examination, however, Surles testified clearly that the remark was made in his office on September 15 during a meeting between Surles, Brantley, and Brantley's husband— not at a board meeting.

Surles and the board members do not dispute this sequence of events. Instead, they maintain that the decision to fire Brantley was an ongoing one that was not resolved until the November 1 meeting. Because Brantley's remark was made before the November 1 meeting, Surles and the board members argue that the board was entitled to consider the remark in reaching its decision.

Surles and the board members argue that the decision to fire Brantley had not been made by September 15. They maintain that the decision to fire Brantley could be made only by the board, not Surles, and that the board did not make that decision until November 1. The position of Surles and the board members ignores the fact that, by the board's unanimous decision at its September 13 meeting, Brantley's employment ended on September 17. It was the board, not Surles, that fired Brantley on September 13.

The board called the November 1 meeting in response to a request from Brantley's attorney, who was challenging the board's decision. At the time of the November 1 meeting, Brantley had been fired from her job at the public school for more than six weeks. The record contains no indication that the board would have pursued the matter beyond its September 13 meeting if not for the letter from Brantley's attorney. The September 14 and September 20 letters written by Surles state unequivocally that Brantley was fired as of September 17, and that the decision to fire Brantley was made by the board.

At its November 1 meeting, the board could have voted to reverse its September 13 decision. In an attempt to avoid further litigation and settle Brantley's claim, it could vote to reverse or modify its decision today. The board's ability to review its actions does not make them ongoing. The decision to fire Brantley was no more ongoing on November 1 than it is today.

The district court's finding that Brantley was discharged for disrespectful conduct is clearly erroneous. The court's remaining findings have not been challenged and are not clearly erroneous. Brantley was fired for pursuing her constitutionally protected interest in the education of her son. The board had no interest sufficient to justify its action. Accordingly, the mandate of the prior panel requires that the judgment of the district court be reversed and the cause be remanded for the court to award damages, including back pay, attorney's fees, and reinstatement.

REVERSED and REMANDED.