**Mrs. Tobie BRANTLEY,**
**Plaintiff-Appellant,**
**Cross-Appellee,**

v.

**M.F. SURLES, etc., et al.,**
**Defendants-Appellees,**
**Cross-Appellants.**

No. 85–4771.

United States Court of Appeals,
Fifth Circuit.

Nov. 17, 1986.

Charles L. Lewis, Jr., Louisville, Miss., for plaintiff-appellant, cross-appellee.

John L. Low, IV, Watkins & Eager, Jackson, Miss., for defendants-appellees, cross-appellants.

Before CLARK, Chief Judge, WISDOM, and HIGGINBOTHAM, Circuit Judges.

CLARK, Chief Judge:

This is the third time that Tobie Brantley has been before this court in connection with her § 1983 claim against the Montgomery County, Mississippi School District that her 1976 discharge was wrongful. In the latest episode, the district court awarded Brantley $15,880.85 in backpay and $37,500.00 in attorney's fees. Brantley appeals both awards, while the school district cross-appeals only the award of attorney's fees. We affirm.

I.

The facts and procedural history of this case are described in more detail in *Brantley v. Surles*, 718 F.2d 1354 (5th Cir.1983), and *Brantley v. Surles*, 765 F.2d 478 (5th Cir.1985). They show Brantley was discharged by the school district from her job as a cafeteria worker in 1976 in violation of her constitutionally protected interests in the education of her son because she enrolled him in a private academy. Brantley's attempt to gain job reinstatement and backpay in a Mississippi court under state law was initially successful. The State Supreme Court, however, twice rejected Brantley's claims, and eventually she brought an action under 42 U.S.C. § 1983 in the district court. Two adverse rulings in district court and two reversals in this court followed. In the second reversal, we held that the evidence established that Brantley was discharged for unconstitutional reasons and was entitled to reinstatement, damages, attorney's fees, and costs.

The district court held an evidentiary hearing at which Brantley and Benny Joe Watson, the current superintendent of education, testified. The parties stipulated the amount Brantley would have received in gross wages had she remained employed. Working from this figure, the court added benefits she would have received and subtracted benefits she had already received in place of her lost wages to reach a backpay award of $15,880.85, plus interest of $6,352.34 and $2500 as compensation for her loss of constitutional rights.

Brantley's attorney originally claimed a total fee of $123,412.50, representing $46,537.50 for 620.5 hours spent pursuing relief in state court and $76,875.00 for 1,025 hours in federal courts. Applying the factors outlined in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), the court reduced the time to 500 hours for counsel's efforts in federal court, and refused any award for time spent in the state court. The court set the hourly rate at $75.00 and awarded fees of $37,500.00.

II.

Brantley contends on appeal that the district court erred in computing her backpay award by deducting the amount of social security benefits she received during the school year of 1984–85. Brantley further contends that the court's exclusion of other benefits from her backpay award was improper.

## A.

■ We decline to address Brantley's contention that social security payments are collateral benefits which should not be deducted from her backpay award. *See Maxfield v. Sinclair International,* 766 F.2d 788 (3d Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986). The district court's decision to deduct $4,632.00 (the amount Brantley had received in social security benefits since reaching age 62) from her total gross wages was never questioned at the hearing, or by motion to alter or amend. The role of this appellate court is limited. We are a court of errors. We will not consider matters not raised before the district court unless a miscarriage of justice would result. *Calmaquip Engineering West Hemisphere Corp. v. West Coast Carriers, Ltd.,* 650 F.2d 633, 637 (5th Cir.1981).

In the case at bar, counsel for Brantley had numerous opportunities to put the court on notice that he objected to the deduction of an amount commensurate with what Brantley received in 1984–85 in social security benefits. At the beginning of the hearing, in an effort to encourage the parties to settle on an appropriate amount for the backpay award, the district judge discussed step-by-step how he anticipated making the calculations. The judge then asked counsel for their opinions on the status of the social security benefits Brantley had received. When the judge stated that he believed the benefits "might be deductible," counsel for Brantley stated that he didn't know whether the benefits should be deducted. When the court began making calculations on backpay, counsel for Brantley neither objected to nor questioned the deduction of the benefits.

■ Brantley asserts that the evidence of social security benefits was adduced at a confusing juncture in the proceedings, at which time the judge was asking for numbers and adding or subtracting from the gross wages figure. Any confusion over mathematics does not excuse a party's failure to assert a legal issue.

■ Brantley urges that the district court further erred by permitting a double deduction of the amount Brantley would have paid into social security out of her gross wages and the amount her employer, the school district, would have contributed at the same time. Again, regardless of the merit of this contention, we decline to consider this matter since no objection was made in district court as to this deduction. In the overall give and take of calculating the amount of this backpay award, the failure to consider the social security issues did not result in a miscarriage of justice.

## B.

In awarding backpay, the district court added to Brantley's gross wages the amount that would have been contributed on her behalf to the retirement fund. Brantley argues that she should have been compensated for the loss of retirement benefits she would have received had she remained a member of the state retirement system. Some time during the period Brantley was out of work, she withdrew all of the retirement funds which had been contributed over the years to her account. Mississippi law provides that one can reenter the state retirement system only after working an additional four years after reinstatement and repaying the amount withdrawn plus interest. Miss.Code Ann. § 25–11–117. Brantley contends that she was forced to withdraw from the system for unconstitutional reasons and is thus entitled to compensation for the loss of her monthly pension benefits.

■ Brantley does not desire reinstatement. Thus, she is unable to meet the state law requirement that she work four additional years. Under state law she cannot be reinstated in the retirement system.

■ Brantley submits that she needed the money from her contributions to live on while unemployed. Nothing in the record supports this contention. The district court found that she voluntarily chose to withdraw her retirement funds rather than leave the money in the program and later receive benefits. This finding is not clearly

erroneous. Her withdrawal of the funds was not a necessary consequence of her unconstitutional firing.

We affirm the district court's backpay award.

### III.

Both parties appeal the attorney's fee award. Brantley submits that the district court should have awarded fees for the time spent pursuing relief in Mississippi courts. She also argues that the court misapplied the *Johnson* factors, *see Johnson,* 488 F.2d at 717–19, in calculating the award for time spent in federal court. The school district counters that the award should have been limited to $7,500 under a proper application of the *Johnson* factors.

■ Brantley contends her case against the school district involved a single constitutional claim—the right to educate one's child where one sees fit. Brantley further argues that her § 1983 action was necessitated by the state courts' ultimate rejection of her state law claims for reinstatement and backpay. She asserts that *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), barred federal court action until the state failed to provide relief. This is incorrect. In *New York Gaslight Club,* state litigation was used to enforce a federal civil rights statute. Brantley's state court case did not seek to enforce federal constitutional rights. As the district court noted, the federal forum was as open to Brantley in 1976 as it was in 1981. Brantley also could have brought a § 1983 action in state court. She decided instead to pursue her claim under state law. The plain language of 42 U.S.C. § 1988, the statute under which she seeks recovery of attorney's fees, states that a prevailing party may recover fees in the court's discretion in any action to enforce the provision of § 1983 or other federal civil rights statutes. Since Brantley's state court litigation was based on state law, the district court properly ruled that § 1988 does not allow compensation for her counsel's efforts in state court.

Both sides assert error in the district court's calculation of attorney's fees pursuant to the *Johnson* factors. Since *Johnson* was decided by this court, the Supreme Court has held that an award of attorney's fees under § 1988 should normally be based on multiplying a reasonable number of hours worked by a reasonable rate of compensation. *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart,* 461 U.S. 424, 433–34, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983). The Supreme Court recognized, however, that the calculation of this lodestar does not end the inquiry and that other considerations may lead the district court to adjust an award upward or downward. *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940; *Sims v. Jefferson Downs Racing Association,* 778 F.2d 1068, 1084 (5th Cir.1985).

In *Nisby v. Commissioners Court,* 798 F.2d 134, 136 (5th Cir.1986), we held that *Blum* and *Hensley* did not abrogate the requirement that district courts must consider the twelve factors set down in *Johnson.* We pointed out, however, that we did not seek a rote catechism. Just compensation is the goal. Many of the *Johnson* factors may be subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate. *See Hensley,* 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9. The first and fifth *Johnson* factors—(1) the time and labor required and (5) the customary fee—are obviously included in the calculation of the lodestar figure. The other ten factors—(2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases—will rise or fall in importance according to the facts of each case. Our concern is not that a complete

litany be given, but that findings be complete enough to assume a review which can determine whether the court has used proper factual criteria in exercising its discretion to fix just compensation.

Brantley argues that the district court failed to give adequate consideration to the risk of not prevailing in the suit and gave no weight to what she asserts was the undesirability of the case. *Johnson,* 488 F.2d at 719. The risk of not prevailing is not an articulated *Johnson* factor, but, as Brantley correctly points out, this risk can be taken into consideration as part of factor six, concerning an adjustment for a contingent fee arrangement. *See Van Ooteghem v. Gray,* 774 F.2d 1332, 1338 (5th Cir.1985).[1]

■ The district court considered all twelve of the *Johnson* factors in its opinion. It devoted most attention to the first *Johnson* factor concerning the time and labor reasonably required to render services. The court concluded that Lewis had failed to exercise reasonable billing judgment and reduced Lewis' billed hours. It carefully discussed each reduction. We find the analysis in the opinion extremely thorough and its factual underpinnings entirely free of clear error.

In addressing each *Johnson* factor and its relevancy to the case, the court permissibly dismissed a number of factors without discussing them in depth, including one of the considerations which Brantley now asserts was vital to her claim. Rather than articulate an analysis, the court merely concluded that the tenth factor—undesirability of the case—was not relevant. In considering the sixth factor, the district court recognized that, since Brantley was proceeding *in forma pauperis,* counsel had to be compensated from a recovery or an award of fees.

■ After articulating every *Johnson* factor and making findings on each, the court concluded that it should not adjust the hourly calculation either upward or downward because the result compared very favorably with awards made and hourly rates used in other similar cases. In view of this finding and in the absence of any specific showing to the contrary, we assume that the court gave full consideration in distilling its ultimate conclusion to the contingent nature of counsel's compensation. We further assume that the court found no basis in the record for Brantley's contention that this contest of a teacher's discharge for enrolling her child in a private school was the sort of undesirable lawsuit that should result in enhancement of a fee award. Neither determination was shown to be clearly erroneous.

■ A district court cannot be expected to anticipate every conceivable argument that might be raised under each of the twelve *Johnson* factors and to make findings that will respond to them. The court's opinion in this case evinces consideration of each factor—albeit in some instances, by no more than a statement that a particular factor is irrelevant. This is sufficient here because we can say the overall fee calculation meets the Supreme Court's guidelines in *Blum* and *Hensley.*

■ The school district argues that the fee award is disproportionate and unreasonable in relation to the results obtained and that the award is greatly in excess of the amount charged by its own attorneys, who billed only $7,923.50 for their opposing work in the same court. Neither of these considerations are grounds for automatically reducing a district court's fee award. Attorney's fees under § 1988 are not limited to the amount recovered by the plaintiff. *Harkless v. Sweeny Independent School District,* 608 F.2d 594, 598 (5th Cir.1979). Although the fee award is nearly two times as large as the damages Brantley recovered, there is no rule of proportionality

---

1. The Supreme Court has recently asked for further argument regarding the use of multipliers or enhancement of the lodestar based on the risk of losing. *See Pennsylvania v. Delaware Valley Citizens Council for Clean Air,* —— U.S. ——, 106 S.Ct. 3088, 3100, 92 L.Ed.2d 439 (1986). Any ruling on the propriety of using multipliers to increase an award does not effect our ruling in the case at bar.

between fee awards under § 1988 and the amount of damages a civil rights plaintiff actually recovers. *City of Riverside v. Rivera,* —— U.S. ——, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (attorneys received seven times as much in fees as their clients recovered in damages). That the amount of the fee award exceeds the amount billed by opposing counsel is also not determinative.

To arrive at a reasonable fee, the court pared the hours submitted by Lewis by more than half, and the $75 hourly rate of compensation it used was within the range normally allowed in the district. The court was impressed with Lewis' diligent efforts for his client, particularly the fact that Lewis was successful two times in reversing the district court. The school district offers no suggestions for specific reductions, rather it relies on the notion that the awarded fee is unreasonable.

While specific findings on individual *Johnson* factors involve fact determinations reversible under the clearly erroneous standard of Fed.R.Civ.P. 52, the ultimate determination of the amount of the award is a matter within the sound discretion of the district court. *Johnson,* 488 F.2d at 717. We find no clearly erroneous factual determinations and no abuse of discretion.

### IV.

In sum, we decline to adjust the computation of Brantley's backpay award, we reject Brantley's contention that she should be further compensated for "loss" of retirement benefits, and we conclude that the district court's calculation of a reasonable attorney's fee was not an abuse of discretion.

AFFIRMED.