**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 11 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

RONALD K. MASON,

        Plaintiff-Appellee -
        Cross-Appellant,

    v.

OKLAHOMA TURNPIKE
AUTHORITY, SAM SCOTT, and
TERRY YOUNG,

        Defendants-Appellants -
        Cross-Appellees,

and

JAMES ORBISON, GILBERT GIBSON,
MICK LAFEVERS, JIM SCOTT, JOHN
GIBBS, JAMES BEACH, and ALAN
FREEMAN,

        Defendants.

Nos. 96-6308
and 96-6323
(W.D. Oklahoma)
(D.C. NO. CIV-93-1836-R)

---

ORDER AND JUDGMENT[*]

---

Before **ANDERSON, BALDOCK**, and **EBEL**, Circuit Judges.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

This appeal and cross-appeal involve the attorney's fees award Plaintiff Ronald Mason received after prevailing in a 42 U.S.C. § 1983 civil rights action against the defendants. Ruling on applications submitted by Mason pursuant to 42 U.S.C. § 1988, the district court awarded $125,080.73 in attorney's fees and expenses, an amount less than half of the $311,445.53 requested. On appeal, the defendants challenge the portion of the district court's order awarding Mason $5,967.08 for fees related to work on the issue of front pay. On cross-appeal, Mason challenges multiple aspects of the district court's reductions to his fee request. We affirm the district court with respect to the issue raised in the defendants' appeal. We also affirm the district court with respect to the issues raised in Mason's cross-appeal as they affect Scott and the OTA. Due to Young's intervening bankruptcy petition, however, we stay Mason's cross-appeal with respect to Young.

**I.**

The factual background and procedural history of the litigation underlying the attorney's fees award in this case are fully set forth in a prior opinion of this court. See Mason v. Oklahoma Turnpike Auth., Nos. 96-6065, 96-6069, ___ F.3d ___ (10th Cir. filed June 11, 1997). After obtaining a jury verdict in his favor on federal and state law claims, Mason filed his initial fee application in the district court. See Appellant's App. Vol. I at 54. Mason's lead counsel, Mr. Weeks, sought compensation for 768.5 hours at

an hourly rate of $200, and for 1.54 hours at a paralegal rate of $25 per hour. Co-counsel, Ms. Gaddis, sought compensation for 564 hours at an hourly rate of $125. Mason also requested compensation for approximately 126 hours of work performed by other counsel retained for their expertise in bankruptcy and collections. Finally, Mason requested an additional $8,793 in expenses.

In opposition to Mason's application, the defendants argued that the requested fee was unreasonable, that the court should reduce the hours claimed by all counsel, and that the court should reduce the hourly rate requested for Mr. Weeks. Id. at 238. The defendants sought disallowance of "duplicative and unnecessary" work, and disallowance of travel time claimed by Ms. Gaddis. Id. The defendants also argued that the hours claimed for counsels' work on collection and bankruptcy matters should be disallowed as "clearly not appropriate in this Section 1983 action." Id. Finally, the defendants contended that Mason should not be compensated for such extravagant expenses as shadow jurors, hotel and parking during trial, a deposition reader, flight insurance, and other items. Id. at 239.

In a detailed, twenty-nine page order, the district court granted $123,829.23 of the $245,544 sought by Mason in his initial application. Id. Vol. II at 383-84 (Order filed June 10, 1996). In making such a reduction to Mason's application, the district court first analyzed the degree of success obtained by Mason's counsel. The court noted that Mason initially raised nine claims against twelve defendants, but that "[b]y the time the case was

tried, only three of the Plaintiff's claims survived, and only three Defendants remained." Id. at 358. In terms of the relief obtained, the court noted that Mason had succeeded on his three claims at trial, had received back pay and front pay, and had obtained a punitive damage award. The court also noted, however, that the jury completely rejected Mason's one to ten million dollar claim for emotional distress damages, and that the front pay obtained by Mason was less than a tenth of that requested. The court concluded that counsel had "achieved a moderate degree of success on behalf of the Plaintiff." Id. at 359. In light of the degree of success, the court found it would be appropriate to exclude, to the extent possible, hours expended on unsuccessful claims, dismissed defendants, and demands for relief to which Mason was not entitled.

Next, the district court proceeded to the specifics of the fee request. The court found that the $200 per hour rate requested for Mr. Weeks was "substantially in excess" of the prevailing market rates, and that $150 per hour was appropriate.[1] Id. at 361. The court then disallowed an array of hours as unnecessary, unreasonable, duplicative, or as simply non-related to the § 1983 proceeding. Most notably, the court disallowed the following: (1) 73 hours in travel time billed by Ms. Gaddis for her commute between Duncan, Oklahoma and Oklahoma City; (2) 18 hours of Mr. Weeks' time and 5.8 hours of Ms. Gaddis's time for excessive work on the issue of front pay; (3) 16.53 hours of Mr. Weeks' time and 3.6 hours of Ms. Gaddis's time spent defending a State Bar grievance

---

[1]The court approved Ms. Gaddis's requested rate of $125 per hour.

against Mr. Weeks; (4) 25.18 of Mr. Weeks' time and 14.8 hours of Ms. Gaddis's time for work relating to Mason's bankruptcy; (5) 43.36 hours of Mr. Weeks' time and 10.2 hours of Ms. Gaddis's time as excessive time spent on researching, editing, and drafting Mason's complaint; and (6) 14.35 hours for Mr. Weeks' time and 3.4 hours for Ms. Gaddis's time expended on collection matters. The court also disallowed miscellaneous hours for unwarranted and unsuccessful motions, and determined that over sixty of the hours claimed by Mr. Weeks represented work that should have been performed by non-lawyers and was compensable at a $25 per hour rate. With respect to expenses, the court disallowed $1,235 expended on "shadow jurors," $2,126.25 paid to a "deposition reader" who read a few hours of deposition passages into the record at trial, and several other miscellaneous expenses. Id. at 381. In conclusion, the district court noted that Mason's counsel had "demonstrated a disturbing lack of billing judgment." Id. at 383.

After receiving the above-described award of $123,829.23 in attorney's fees, Mason filed a supplemental application (styled as a motion to alter or amend the original award) seeking approximately $65,000 in additional fees and expenses. Much of the compensation sought in this supplemental application related to bankruptcy and collection work, and to preparation of the supplemental application itself. The district court awarded Mason $1,251.50 of the $65,000 requested. Id. at 446 (Order filed Aug. 21, 1996).

## II.

### Young's Bankruptcy

As fully explained in our separate opinion, filed this date, see Mason, Nos. 96-6065, 96-6069, ___ F.3d ___ (10th Cir. ------, 1997), Young filed a bankruptcy petition during the pendency of this appeal and cross-appeal. For the same reason expressed in that opinion, and in accordance with 11 U.S.C. § 362(a)(1), we stay the resolution of Mason's cross-appeal with respect to Young. However, because Young's solvent co-defendants are independently liable for the attorney's fees awarded by the district court, we decide Mason's cross-appeal with respect to Scott and the OTA.

## III.

### Mason's Cross-Appeal

Because it raises the bulk of the issues before this court, we first address Mason's cross-appeal. In his cross-appeal, Mason undertakes a wide-ranging, multi-pronged attack on the district court's substantial reductions to Mason's proposed lodestar. Mason argues that the district court erred in applying an hourly rate of $150 to work performed by Mr. Weeks. Mason also disputes, item by item, the many instances in which the district court disallowed hours as unnecessary, excessive, duplicative, or unrelated to the § 1983 proceeding.

Under 42 U.S.C. § 1988(b), a court may award a prevailing party a reasonable attorney's fee in a § 1983 case. The Supreme Court has repeatedly emphasized that district courts have considerable discretion in determining the amount of a fee award--a discretion "appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). Therefore, we review a district court's fee award only for an abuse of discretion, Jane L. v. Bangerter, 61 F.3d 1505, 1510 (10th Cir. 1995), mindful that a "request for attorney's fees should not result in a second major litigation." Hensley, 461 U.S. at 437.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Id. at 433. We first address the reasonableness of the hourly rate applied by the district court.

## A.    Hourly Rate

Mason sought an hourly rate of $200 for work performed by Mr. Weeks, but the district court found that $150 per hour was reasonable. "The setting of a reasonable hourly rate is within the district court's discretion," but should "reflect the 'prevailing market rates in the relevant community.'" Jane L., 61 F.3d at 1510 (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)). Here, in support of his $200 per hour request,

Mason presented the affidavit of a local attorney stating that the hourly rates of civil rights attorneys practicing before the United States District Court of Oklahoma range from $125 to $235 per hour "depending upon the reputation, experience, and skills of the attorney in question." Appellant's App. Vol. I at 85.[2] The district court discounted the affidavit evidence, however, concluding that the "going rate is considerably less," and that an hourly rate of $200 is "substantially in excess" of the rates commonly charged by local lawyers with skills comparable to Mr. Weeks. We have previously stated that a district judge may "'turn to her own knowledge' to supplement the evidence" on local billing practices. See Smith v. Freeman, 921 F.2d 1120, 1122 (10th Cir. 1990) (quoting Bee v. Greaves, 910 F.2d 686, 689 n.4 (10th Cir. 1990). We cannot say that the district judge, who observed Mr. Weeks' performance and who is more familiar than we with the prevailing market rates in the Western District of Oklahoma, abused his discretion in applying a rate of $150 per hour.

## B.    Reduction in Hours

Next, we address the district court's reductions to the hours claimed by Mason's counsel. As we have explained many times, a district court must determine "not just the actual hours expended by counsel, but which of those hours were reasonably expended in

---

[2]The affidavit does not include any opinion as to where within the $125 to $235 range Mr. Weeks work should fall.

the litigation." Ramos v. Lamm, 713 F.2d 546, 553 (10th Cir. 1983). In determining reasonableness, the court should ensure that the hours claimed are of the type that would normally be billed to a paying client and are not excessive or duplicative. Id. at 554; see also Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1202-05 (10th Cir. 1986). The court also should deny legal service rates for hours expended by counsel on tasks that are easily delegable to non-professional assistance. New Mexico Citizens for Clean Air & Water v. Espanola Mercantile Co., 72 F.3d 830, 835 (10th Cir. 1996). In all, the district court must ensure that counsel has exercised sound billing judgment, a task we have compared to a senior partner in a private firm reviewing the billing reports of subordinate attorneys. Ramos, 713 F.2d at 555.

In addition to disallowing specific hours for reasons of excessiveness or duplication, a court also may reduce the fee to reflect a plaintiff's limited success. Texas State Teachers Assoc. v. Garland Indep. Sch. Dist., 489 U.S. 782, 789-90 (1989); New Mexico Citizens, 72 F.3d at 834. Indeed, the degree of success obtained is the most important factor in determining a reasonable fee. Garland, 489 U.S. at 789. With these principles in view, we turn to the specifics of Mason's cross-appeal.

*Bankruptcy Work*

A substantial number of the disallowed hours related to counsels' bankruptcy work.[3] During the pendency of Mason's § 1983 proceeding, counsel for the defendants sought to re-open Mason's bankruptcy on the grounds that Mason had failed to list his lawsuit as a potential asset.[4] Mason's counsel expended many hours on proceedings in the bankruptcy court, as well as a lesser number of hours responding to motions brought by the bankruptcy trustee in the § 1983 proceeding. The district court allowed the time expended responding to motions actually brought in the § 1983 proceedings, but disallowed time spent on matters before the bankruptcy court, noting that while Mason "may have reasonably incurred the challenged hours in connection with the Plaintiff's bankruptcy proceeding, and they may be potentially recoverable in the Plaintiff's bankruptcy proceeding," the hours were not reasonably related to Mason's civil rights claim and were not compensable under § 1988. Appellant's App., Vol. II at 370.

Without citing any authority, Mason argues that the district court abused its discretion in disallowing the hours expended on matters before the bankruptcy court. We disagree. Although Mason's bankruptcy threatened to have a potential collateral effect on

---

[3]In his initial and supplemental fee requests, Mason sought well over $45,000 in fees and expenses related to the bankruptcy proceedings.

[4]Apparently, defense counsel believed that the § 1983 suit belonged to the bankruptcy estate, not to Mason.

his civil rights action, this does not mean he was entitled under § 1988 to free bankruptcy counsel.

*State Bar Grievance*

Mason contends that the district court erred in disallowing the hours expended by Mr. Weeks in defending a state bar grievance in which defense counsel contended that Mr. Weeks was not admitted to practice law in Oklahoma. Again, while Mr. Weeks' bar status obviously could have a collateral effect on his representation of Mason, the state bar proceeding was not reasonably related to the civil rights proceeding, and the hours expended on the grievance are not within the purview of § 1988. Attorneys do not customarily bill clients for work related to their own ability to practice law. The district court did not abuse its discretion in excluding such hours.

*Travel Time*

Likewise, we find no error in the disallowance of Ms. Gaddis's travel time between Duncan or Chickasha and Oklahoma City. As the district court noted, travel time may be compensable if reasonable, and if normally billed to a private client in the locality. Smith, 921 F.2d at 1122. The district court disallowed Ms. Gaddis's travel time based on its finding that attorneys in the community do not customarily bill clients for a regular commute to court from a neighboring community. As previously stated, a district

judge may rely on his own knowledge of billing practices in determining whether the plaintiff has established the reasonableness of certain hours. We find no reason in the record to second guess the district court's knowledge of local billing practices with respect to this type of travel time.[5]

*Excessive, Duplicative, or Unnecessary Work*

The district court reduced the hours claimed by Mason's counsel to eliminate excessive, duplicative and unnecessary time. Mason argues that the district court employed the wrong legal standard in making these reductions by disallowing hours expended on "unnecessary" work. Mason asserts that the district court should not have considered whether the work was "necessary," but rather whether a private attorney being paid by a client would have reasonably engaged in similar time expenditures. Appellee's Br. at 20 (citing Goos v. National Ass'n of Realtors, 68 F.3d 1380, 1385 (D.C. Cir. 1995)).

Mason's argument raises a question of semantics, but not of substance. Whether a district court labels a disallowed hour as "unnecessary" or "unreasonable" is of little consequence: courts frequently use both terms in describing why certain hours should not

---

[5]With respect to this and other matters, Mason points to defense counsels' billing records as evidence of local billing practices. The district court considered defense counsel's billing records as a factor in determining local practices, but correctly noted that they were not determinative. See, e.g., Brantley v. Surles, 804 F.2d 321, 327 (5th Cir. 1986); Mirabal v. General Motors Acceptance Corp., 576 F.2d 729, 731 (7th Cir. 1978).

have been billed. See, e.g., Pennsylvania v. Delaware Valley Citizens' Council For Clean Air, 478 U.S. 546, 567 (1986) (affirming 48% and 33% percent reductions in time claimed by counsel, where district court described such time as "*unnecessary*, unreasonable, or unproductive") (emphasis added); Joseph A. v. New Mexico Dep't of Human Servs., 28 F.3d 1056, 1060 (10th Cir. 1994) (stating that fees are compensable only for work that is "useful and of a type ordinarily *necessary*" (emphasis added) (quoting Delaware Valley, 478 U.S. at 561)). More important than the label, of course, is that the district court order exhibit appreciation of the proper standards for arriving at an appropriate fee, and provide sufficient explanation for reductions to permit a meaningful review by this court. Here, the district court's thorough order accomplishes both.

We refrain from an item-by-item discussion of the categories of hours disallowed by the district court as excessive, duplicative, or unnecessary. We have reviewed the district court's order, and have given a full airing to Mason's arguments. We agree with the district court that Mason's counsel expended far more time than required by this relatively straightforward case. Moreover, the district court's reductions to the lodestar are supported by more than just one rationale. As noted previously, hours may be reduced not just to eliminate specific instances of excessiveness or duplication, but also to reflect the plaintiff's overall limited success. Here, the district court specifically assessed the overall success obtained by Mason and determined that a reduction to the fee request was appropriate in light of the number of failed claims, the number of dismissed defendants,

and amount of damages obtained. This separate justification for reducing the fee request is intertwined with, and supports, the district court's detailed explanation of the specific hours disallowed. See Garland, 489 U.S. at 789-90 (stating that the district court's equitable discretion permits it to arrive at a reasonable fee award, "either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success"). For example, even if it were objectively reasonable for counsel to have expended time on any certain unsuccessful claim or motion, disallowing a portion of that time would still be within the district court's discretion as a means of accounting for Mason's overall limited success. As the Supreme Court has explained, even compensation for reasonably expended hours may be excessive where a plaintiff has achieved limited success. Hensley, 461 U.S. at 436-37.

Therefore, we affirm the district court's reductions for excessive, duplicative or unnecessary work, and for limited success.[6] We also approve the district court's decision

---

[6]With respect to the disallowed hours relating to counsels' work on the supplemental fee application, Mason argues that there is a discrepancy between the number of hours claimed and the number believed by the district court to have been claimed. Appellee's Br. at 39. We agree that the district court appears to have miscalculated the time expended on the supplemental application. Because the district court did not allow *any* hours for work on the supplemental application, however, this discrepancy has no effect. Having already awarded counsel compensation for preparing the initial fee request, the district court had the discretion to disallow further compensation for time expended on a largely unsuccessful supplemental application. See Mares, 801 F.2d at 1206 (stating that "hours not spent representing the client are at best on the borderline of what Congress intended to be compensable," and that only in "extraordinary circumstances will we disturb a district judge's exercise of his discretion in awarding or denying fees for establishing fees") (quoting Muscare v. Quinn, 680 F.2d

to compensate some of counsels' time at a lower paralegal rate.  Finally, we find no reversible error in the district court's disallowance of a portion of the expenses claimed by Mason.  In these matters, the question is not whether we would have awarded more, but whether the district court abused its discretion.  Smith, 921 F.2d at 1124.  We are satisfied it has not.

## IV.

### Defendants' Appeal

The defendants raise a single issue on appeal.[7]  They argue that the district court abused its discretion in awarding Mason $5,967.08 for attorney's fees and expert witness expenses incurred in relation to the issue of front pay.  The defendants characterize the front pay hearing as a "separate issue unrelated to any of the issues, such as liability and back pay, previously determined in the action."  Appellant's Br. at 4.  The defendants claim that they, rather than Mason, were the prevailing parties on the front pay issue because the district court awarded only $60,000 in front pay, rather than the $600,000 requested by Mason.  Id. at 5.

---

42, 45 (7th Cir. 1982)).

[7]Young's participation in the defendants' appeal is unaffected by the automatic stay provision of 11 U.S.C. § 362(a)(1).  See Lyngholm v.Chaussee (In re Lyngholm), 24 F.3d 89, 91-92 (10th Cir. 1994).

Contrary to the defendants' characterization, Mason clearly prevailed on the front pay issue. A plaintiff who succeeds on any significant issue in litigation which achieves some of the benefit the plaintiff sought in bringing suit is a prevailing party for purposes of § 1988. Hensley, 461 U.S. at 433. The fact that Mason did not receive as much front pay as he desired does not mean the district court abused its discretion in allowing fees for a portion of counsel's work on the issue. Similarly, the defendants' concession that $60,000 would be an appropriate amount of front pay does not mean it was unreasonable for Mason's counsel to expend time in pursuit of a larger amount. Indeed, it would be surprising if counsel had not. While limited success may warrant a reduction in a fee request, it does not mandate complete disallowance. See Jane L., 61 F.3d at 1511. The district court has already disallowed roughly fifty percent of the hours expended by Mason's counsel on the front pay issue, thus adequately accounting for Mason's limited success. The district court did not abuse its discretion in allowing $5,967.08 in fees and expenses relating to the front pay issue.

## V.

Mason requests that we award him attorney's fees for this appeal. Mason successfully defended against the defendants' sole argument regarding the small portion of fees awarded for work on front pay. However, considering that the resolution of this issue required almost no argument by Mason's counsel, and that Mason's unsuccessful

cross-appeal required a far greater expenditure of time by the defendants, we deny attorney's fees for this appeal.

## CONCLUSION

For the foregoing reasons, the August 21, 1996, judgment of the district court awarding Mason a total of $125,080.73 in attorney's fees is AFFIRMED as to Scott and the OTA. We STAY resolution of Mason's cross-appeal with respect to Young.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge